SEALED AIR CORP., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 84-04-00551

(Decided March 21, 1988)

*Barnes, Richardson & Colburn* (*Rufus E. Jarman, Jr.* and *Jack D. Mlawski*) for plaintiff.

*John R. Bolton,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, United States Department of Justice (*Kenneth N. Wolf*), for defendant.

DiCARLO, *Judge:* This action concerns the proper tariff classification of merchandise used to make polyurethane foam packing. The merchandise is polyethylene polyphenyl isocyanate, also known as polymeric isocyanate (PMDI), consisting of over 50% diphenylmethane diisocyanate (MDI) and progressively decreasing amounts of other polymeric isocyanates. The United States Customs Service (Customs) classified the merchandise under item 405.80 of the Tariff Schedules of the United States (TSUS) as other [c]yclic organic chemical products * * * provided for in the Chemical Appendix to the Tariff Schedules." The consignee of the imported merchandise and plaintiff in this action, Sealed Air Corp., claims the merchandise is properly classifiable under item 409.18, TSUS, as a plastics material and thermosetting resin. After full trial and briefing by the parties, the Court finds that the imported merchandise is properly classifiable as plaintiff claims.

DISCUSSION

The parties agree that if the imported polymeric isocyanate is a plastics material and thermosetting resin within Headnotes 3 and 4(b) of Part 1, Subpart C of Schedule 4 of the TSUS, then the merchandise is properly classifiable under item 409.18, TSUS. The only issue for the Court is whether the polymeric isocyanate is a plastics material and thermosetting resin within the meaning of those terms as defined in Headnotes 3 and 4(b).

> Headnote 3 provides that the term "plastics materials" embraces products formed by the condensation, polymerization, or co-polymerization of organic chemicals and to which plasticizers, fillers, colors, or extenders may have been added. The term includes, but is not limited to, phenolic and other tar-acid resins, styrene resins, alkyd and polyester resins based on phthalic anhydride, coumarone-indene resins, urethane, epoxy, toluene sulfonamide, maleic, fumaric, aniline, and polyamide resins, and other synthetic resins. The plastics materials may be in solid, semi-solid or liquid condition, such as flakes, powders, pellets, granules, solutions, emulsions, and other basic forms not further processed.

Schedule 4, Part 1, Subpart C, Headnote 3, TSUS. The headnote language thus requires plastics materials to be obtained by condensation, polymerization, or co-polymerization of organic chemicals.

In a case interpreting Headnote 3, a three judge panel of the United States Customs Court held that paints consisting of alkyd resins, solvents, and pigments are "plastics materials" within the meaning of Headnote 3. The court found

> that the plain meaning of the term "plastics materials" covers the importations at issue. They are materials with which a plastic entity is made. The fact that the entity is in the form of a coating and not an independently structured article, makes no difference. Nor does the fact that they might also be commonly described as paint detract from the finding that within the "benzenoid" part of the tariff schedules where they must be classified due to their composition, they are best described as plastics materials.

*Volkswagen of America, Inc.* v. *United States,* 68 Cust. Ct. 122, 130, C.D. 4348, 340 F. Supp. 983, 989 (1972), *aff'd per curiam,* 61 CCPA 41, C.A.D. 1115, 494 F.2d 703 (1974). *See also United States* v. *Mobay Chem. Corp.,* 65 CCPA 53, C.A.D. 1206, 576 F.2d 368 (1978); *Verona Dyestuffs Div. of Verona-Pharma Chem. Corp.* v. *United States,* 69 Cust. Ct. 26, C.D. 4369 (1972).

The second part of the Court's inquiry concerns the scope of the term "thermosetting resins." Headnote 4(b) defines "thermosetting resins" or "thermosets" as

those materials in unfinished forms which in their final state as finished articles are substantially infusible. Thermosetting resins are often liquids at some stage in their manufacture or processing and are cured by heat, catalysis, or other chemical means. After being fully cured, thermosets cannot be resoftened by heat.

Schedule 4, Part 1, Subpart C, Headnote 4(b), TSUS.

Based on the testimony presented at trial, the Court finds that the polymeric isocyanate is formed by the condensation of organic chemicals, as required by Headnote 3. R. 18–19, 74, 108, 256. The Court also finds that polymeric isocyanate, in its unfinished form, is a liquid which is further processed by curing to form infusible finished plastic articles such as isocyanurate plastics and polyurethane plastics, and is a thermosetting resin within the scope of Headnote 4(b). Uncontested Facts, ¶5; R. 73–74, 179–80, 217–18.

Plaintiff presented an eminently qualified expert witness who, after agreeing with the tariff definitions of the terms plastics materials and thermosetting resins, testified that the imported merchandise is formed by the condensation of organic chemicals as required by Headnote 3, and is a material in unfinished form which can be cured to create an infusible finished article, such as isocyanurate or polyurethane plastic, which is incapable of resoftening, as required by the definition of thermosetting resin in Headnote 4(b). R. 27–28, 37–38, 44, 73–74. The witness also testified that polymeric isocyanate is a synthetic resin because it is an oligomer type of polymer, and that the imported merchandise is a plastics material and thermosetting resin within the statutory definitions provided in Headnotes 3 and 4(b).

Defendant presented three witnesses. One defense witness who had never analyzed polymeric isocyanate first testified that he considered polymeric isocyanate as primarily a monomer, R. 122–23, 148, but later contradicted his earlier testimony by stating that thermosetting resins are oligomers. R. 117. He opined that all plastics materials and resins are oligomers for tariff purposes, R. 181, and testified that a thermosetting resin in an unfinished form could only be of low molecular weight. R. 150, 153. The witness defined "oligomer" as a low molecular weight polymer of only a few repeating units. R. 154. Although the witness agreed that the molecular weight of polymers, specifically low polymers, is between 300 to 500, and agreed that polymeric isocyanate is of sufficient molecular weight to be considered an oligomer, i.e. polymer, he would not apply that term to the imported merchandise because he considered it to be predominantly monomer. R. 163–65.

A second defense witness testified that polymeric isocyanate is not a polymer and considered use of the term polymeric MDI in describing polymeric isocyanate to be a misnomer. R. 204. Instead, this witness testified that "generally accepted industry understand-

ing" is that polymeric isocyanates are low molecular weight oligomers of MDI, and that polymeric isocyanate is merely referred to as "oligomers of MDI." R. 206–09, 219. The witness then testified that a polymer could be of low or high average molecular weight and disagreed with a defense exhibit which limited the definition of the word polymer to only high molecular weight products. R. 211. Because the terms polymer and oligomer can be used interchangeably, the witness concluded that polymeric isocyanate is a very low molecular weight polymer. R. 213, 219. The witness further agreed that the terms polymer, resin, and plastic can refer to both the cured and uncured forms and that the uncured form is normally of low molecular weight. R. 237–38.

Defendant presented a third witness who disagreed with the tariff definitions adopted by Congress, and instead would require thermosetting resins to be cured products which are not moldable or subject to further processing, and which are unusable as adhesives or in liquid form. R. 256, 259, 261, 269. This third witness also contradicted the first defense witness by testifying that it is not unusual for poloymers, i.e., resins, to be over 50% monomer and that commonly known epoxy resins are mixtures of monomers and oligomers with the monomer portion exceeding 50% of the resin. R. 96, 273–74.

The weight to be accorded expert testimony is a matter for the trial court to determine. *Austin Chem. Co. v. United States,* 835 F.2d 1423, 1426 (Fed. Cir. 1987). Plaintiff established by reference to the TSUS and its definitions, corroborated by expert testimony, that the imported merchandise is a plastics material and a thermosetting resin. After examining the credentials of the plaintiff's witness, observing his demeanor, hearing the testimony, and examining the exhibits, the Court accepts the testimony of the plaintiff's witness.

The Court finds that the plaintiff has overcome the presumption of correctness which normally attaches to a Customs classification of imported merchandise, and that the merchandise is properly classifiable as a plastics material and thermosetting resin under item 409.18, TSUS. Accordingly, the Court does not reach the plaintiff's further argument that the imported merchandise is properly classifiable under item 409.18, TSUS, under the rules of *ejusdem generis.*

CONCLUSION

Plaintiff has overcome the presumption of correctness which normally attaches to a Customs classification of imported merchandise. From the testimony provided at trial and examination of the imported merchandise, the Court finds that the imported polymeric isocyanate is properly classifiable as a plastics material and thermosetting resin under item 409.18, TSUS. Judgment will be entered accordingly.